# ATTACHMENT "1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**MAKAYLA DARRIELLE SAULNY,**
**On behalf of herself and all**
**Other Mississippi citizens similarly situated,**

**Plaintiff**,

**CASE NO. 3:24-cv-00619-HTW-LGI**
**CLASS REPRESENTATION**

**vs.**

**VGW HOLDINGS LIMITED, VGW**
**MALTA LIMITED, VGW LUCKYLAND INC.,**
**VGW GP LIMITED, VGW HOLDINGS US INC.,**
**VGW US INC.**

**Defendants.**

_____/

## AMENDED COMPLAINT

Plaintiff MAKAYLA DARRIELLE SAULNY, whose address is 111 S. Canton

Club Cir., Jackson, Mississippi, brings this action and sues Defendants VGW

HOLDINGS LIMITED, that has an address of L 11, Australia Place, 15-17

William Street Perth, Western Australia 6000 Australia, including its subsidiaries

VGW MALTA LIMITED, with an address of 5-7 Matilda Court, Giuseppe Cali

Street, Ta'Xbiex, XBX 1423 Malta, VGW LUCKYLAND INC., a Delaware

Corporation with an address Care of Paracorp Incorporated, 2140 S. DuPont Hwy.,

Camden Delaware 19934, VGW GP LIMITED that has an address of Trident Park,

Notabile Gardens No6, Level 3 Central Business District, Mdina Road, Zone 2,

BIRKIRKARA, Malta, VGW HOLDINGS US INC. with an address Care of

Paracorp Incorporated, 2140 S. DuPont Hwy., Camden Delaware 19934, and VGW

US INC. with an address of Care of Paracorp Incorporated, 2140 S. DuPont Hwy.,

Camden Delaware 19934.

## PARTIES JURISDICTION AND VENUE

1.      This court has jurisdiction over the subject matter of this action because it is

a court of general jurisdiction and the damages sought by Plaintiff and on behalf of

a group of Mississippi citizens (hereafter referred to as the "Class") exceed the

jurisdictional threshold for the Mississippi courts.

2.      VGW HOLDINGS LIMITED is an Australian company that – according to

its audited financial statements filed with the Australian Securities & Investments

Commission – fully controls and operates its subsidiary companies, VGW MALTA

LIMITED, VGW LUCKYLAND INC., VGW GP LIMITED, VGW HOLDINGS

US INC., and VGW US INC.  VGW HOLDINGS LIMITED operates an internet

website "vgwplay.com" that links to its subsidiary companies' internet casino

gambling operations.  VGW HOLDINGS LIMITED, along with its subsidiary

companies, actively operate and market internet gambling websites within the state

of Mississippi and Hinds County, which websites and operations are unpermitted and illegal under Mississippi law.

3.      VGW LUCKYLAND INC. is a Delaware corporation.  VGW LUCKYLAND INC. maintains an office in San Francisco California.  VGW LUCKYLAND INC. conducts business throughout Hinds County and the state of Mississippi.

4.      VGW MALTA LIMITED is a company formed in the Island of Malta. VGW MALTA LIMITED conducts business throughout Hinds County, and the state of Mississippi.

5.      VGW GP LIMITED is a company formed in the Island of Malta.  VGW GP LIMITED conducts business throughout Hinds County, and the state of Mississippi.

6.      This court has personal jurisdiction over VGW HOLDINGS LIMITED, including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC., VGW GP LIMITED, VGW HOLDINGS US INC., and VGW US INC. pursuant to MS Code § 13-3-57 because these defendants continually conduct business within the boundaries of the state of Mississippi, attempt to contract to supply goods and services into Mississippi, and have tortiously injured Plaintiff and other Mississippi citizens by wrongly taking their money through illegal gambling operations that take place in Mississippi.

7.     VGW HOLDINGS LIMITED, the parent company of VGW MALTA
LIMITED, VGW LUCKYLAND INC., VGW GP LIMITED, VGW HOLDINGS
US INC., and VGW US INC., actively controls and actively operates these
subsidiaries and exercises sufficient control over the subsidiaries to render VGW
MALTA LIMITED, VGW LUCKYLAND INC., VGW GP LIMITED, VGW
HOLDINGS US INC., and VGW US INC. as agents or alter egos of VGW
HOLDINGS LIMITED.  Hereafter, VGW HOLDINGS LIMITED is referred to as
"VGW HOLDINGS".  VGW MALTA LIMITED is referred to as "VGW
MALTA", VGW LUCKYLAND INC., is referred to as "VGW LUCKYLAND"
and VGW GP LIMITED is referred to as "VGW GP".  Throughout this Amended
Complaint (hereafter referred to as "the Complaint") when Plaintiff refers to VGW
HOLDINGS, VGW MALTA, VGW LUCKYLAND, VGW GP, VGW HOLDINGS
US INC., and VGW US INC., collectively, Plaintiff refers to these combined
Defendants acting in concert as "VGW".

8.     Venue is proper in Hinds County pursuant to MS Code § 11-11-3 and
Mississippi law because Plaintiff resides in Hinds County, substantial acts or
omissions giving rise to the claims asserted herein occurred in Hinds County, and
because VGW committed acts in Hinds County that caused injury to Plaintiff and
form the basis for this lawsuit.

9.    VGW actively promotes and operates internet gambling websites that target Plaintiff and other citizens of the state of Mississippi or Mississippi citizens and conducts business within the state of Mississippi and Hinds County.

10.    Plaintiff is a natural person and citizen of the state of Mississippi who resides in Hinds County, Mississippi at all times material to this Complaint.

11.    Between May 19, 2024, and June 28, 2024, Plaintiff registered and entered into internet casino websites operated by VGW MALTA, VGW LUCKYLAND, and VGW GP, which are owned and controlled by VGW HOLDINGS.  During that period Plaintiff lost approximately $350, playing the casino games of chance that are promoted and operated by VGW on these internet websites ($250 on Chumba; $50 on LuckyLand; $50 on Global Poker).

12.    Plaintiff is authorized to bring this action because Plaintiff was damaged by the illegal gambling operations conducted by VGW, and because Plaintiff has not agreed to any form of arbitration or alternative dispute resolution.  This is because on May 31, 2024, in accordance with the Terms of Service / Terms and Conditions contained in VGW's websites, Plaintiff timely "opted out" of any obligations to participate in arbitration or alternate dispute resolution, and VGW's additional terms including "choice of law" and "forum selection clause".  After VGW did not respond to Plaintiff's emails "opting out" of arbitration, Plaintiff timely sent emails on June 20, 2024, reaffirming the desire to "opt out" of arbitration.  Copies of

Plaintiff's notices are attached as Composite Exhibit "A" and incorporated as part of this Complaint by reference. Meanwhile, after Plaintiff's notices were sent to VGW, VGW allowed Plaintiff to continue to play the games and gamble on VGW's websites.

13.    Plaintiff is also authorized to bring this action on behalf of other similarly situated Mississippi citizens who have gambled on VGW websites.

14.    VGW actively promotes and operates internet gambling websites that target Plaintiff and other citizens of the state of Mississippi or Mississippi citizens and the actions of VGW constitute conducting business within the state of Mississippi and Hinds County.

## FURTHER ALLEGATIONS SUPPORTING
## PERSONAL JURISDICTION OVER VGW

15.    Defendants VGW LUCKYLAND, VGW HOLDINGS US INC., and VGW US INC. are Delaware Corporations. Therefore, VGW LUCKYLAND, VGW HOLDINGS US INC., and VGW US INC are subject to the jurisdiction of the courts in the United States.

16.    Further, VGW LUCKYLAND has office operations in California.

17.    VGW MALTA maintains its United States headquarters as a post office box in Portsmouth, New Hampshire and records show that it maintains an office in Boulder, Colorado at 1881 9th Street, Suite 202.

18.    Records further show that VGW GP maintains United States operations for Global Poker at 1881 9th Street, Suite 202, Boulder Colorado and VGW US INC also appears to maintain an office or operations at that address.

19.    All VGW games are required to be played within the boundaries of the United States and Canada.

20.    All United States players of VGW games are required to make transfers or payments from charges on credit cards, debit cards, digital wallets, and gift cards from within the United States.

21.    Whenever a United States citizen attempts to collect winnings of money from playing VGW's gambling games, all VGW games mandate that prizes, or money paid to players must be paid to a bank, digital wallet, or gift card within the United States.

22.    All VGW's websites seek to invoke the privileges afforded to United States' companies, such as attempts to invoke arbitration under the Federal Arbitration Act.

23.    VGW also affirmatively seeks the protections of United States law by attempting to place in its Terms of Service / Terms and Conditions (hereafter "Terms of Service") forum selection clauses and choice of law provisions.

24.    Specifically, VGW declares in its Terms of Service that it believes Delaware law should be the accepted law within the United States.

25.    By its own actions, VGW has stipulated to personal jurisdiction in several cases within the United States, including the state courts of Massachusetts, and federal district courts in Alabama, and Tennessee.

26.    VGW has affirmatively alleged in a variety of lawsuits that it is protected under the federal Class Action Fairness Act by stating, under oath, that thousands of United States citizens have played its website gambling games in the states of Mississippi, Alabama, Florida, Georgia, Massachusetts, and Tennessee.

27.    VGW has affirmatively claimed in its Terms of Service and posted on its websites that its companies are operating legally within all states of the United States, except for Connecticut, Delaware, Idaho, Michigan, Montana, Nevada, and Washington.

28.    VGW likewise operates several United States shell companies, including VGW US INC and VGW HOLDINGS US INC.

29.    VGW advertises its websites extensively in the United States through various forms of mass communication while spending millions of dollars on advertising with several United States sports and entertainment celebrities as its spokespersons, including Olympic champion swimmer, Michael Phelps, and "American Idol" and daily, national television talk show host, Ryan Seacrest.  Most recently, VGW has even advertised VGW Malta's "Chumba Casino" on the

nationally broadcasted television show, "Wheel of Fortune", through advertisements by Ryan Seacrest, the host of "Wheel of Fortune".

30.    VGW has likewise advertised on the internet for the services of United States citizens to become employees of VGW's subsidiary companies.

31.    VGW's websites are highly interactive in all ways.  They are used simultaneously for commercial transactions – in the form of depositing funds, wagering/gambling, and redeeming funds – and also for exchanging information with VGW's host computers and servers in the form of playing casino games. VGW's websites are built entirely upon high levels of interactivity and are not passive in any way in terms of contact with the United States and its citizens.

32.    Therefore, it is clear that VGW and all of its companies listed as defendants in this Complaint are subject to the personal jurisdiction of the courts of the United States.

## PERSONAL JURISDICTION AND VENUE
## STATE OF MISSISSIPPI

33.    Under Mississippi law and the requirements of due process, VGW has sufficient contacts with the state of Mississippi for purposes of the constitutional exercise of personal jurisdiction over VGW by the Mississippi courts.

34.    VGW actively promotes and operates internet gambling websites that target Plaintiff and other Mississippi citizens and the actions of VGW constitute conducting business within the state of Mississippi and Hinds County.

35.    Plaintiff and other Mississippi citizens are frequently intentionally targeted by advertisements for VGW's websites on platforms such as X/Twitter and Facebook.

36.    In fact, VGW has engaged in and continues to engage in targeted advertising to, and negotiations with, individual Mississippi citizens.   If Plaintiff or other Mississippi citizens enter internet searches for the words, "Chumba", "LuckyLand", "Global Poker" on internet search engines and social media websites, the algorithms utilized by VGW through internet platforms such as Google, Facebook, Instagram, X/Twitter, and others, identify the Mississippi citizens and then broadcasts targeted internet advertisements for VGW back to Plaintiff and other similar Mississippi citizens.  This is a form of specific retargeted advertising employed by VGW to intentionally advertise to, entice, and negotiate with Plaintiff and other Mississippi citizens.  The purpose of VGW's retargeted advertising is to entice Plaintiff and other Mississippi citizens to gamble on VGW's websites.

37.    The retargeted advertising is specific to Plaintiff and other Mississippi citizens because VGW takes significant effort to ensure that it is targeting its

advertising to citizens who VGW believes are citizens in only those states where VGW wrongly claims it is entitled to operate.

38.    Once Plaintiff and other Mississippi citizens decide to access VGW's websites, VGW ensures that Plaintiff and other Mississippi citizens who gamble on the websites are not doing so within those state jurisdictions where VGW now acknowledges it is prohibited from operating.  As an example, the depictions below show messages received when Plaintiff and other Mississippi citizens attempt to access VGW from a state where VGW acknowledges it is prohibited to operate.







39.    To make sure that Plaintiff and other Mississippi citizens are gambling on VGW's websites within the boundaries of the state of Mississippi, VGW verifies that the Plaintiff and other Mississippi citizens register with internet protocol addresses that are geographically assigned to Mississippi.

40.    Further, according to the VGW Terms of Service, Plaintiff and other Mississippi citizens are required to prove that they are citizens of Mississippi by producing their drivers' licenses and verifying their Mississippi addresses.

41.    VGW verifies that Plaintiff and other Mississippi citizens are registering and playing in the state of Mississippi in multiple ways.  VGW confirms the internet protocol addresses of Plaintiff and other Mississippi citizens to ensure that they are the players or wagerers located in Mississippi.  VGW asks for proof of address and identity from Plaintiff and other Mississippi citizens when verifying Plaintiff's and other Mississippi citizens' accounts on the VGW websites.  VGW verifies Plaintiff's and the other Mississippi citizens' bank accounts to process redemptions.  VGW confirms that the addresses registered to the bank accounts match the Plaintiff and other Mississippi citizens' addresses provided to VGW. And the bank accounts, which for all practical purposes, are most likely located in Mississippi are the only bank accounts VGW will accept for processing of payments or redemptions to Plaintiff and the other Mississippi citizens.

42.     After Plaintiff and other Mississippi citizens confirm for VGW that they are going to play VGW's games within the state of Mississippi or only those areas where VGW claims it can legally operate, VGW continually monitors the internet protocol addresses of Plaintiff and other Mississippi citizens as they are playing VGW's games.  This is to ensure that Plaintiff and other Mississippi citizens are conducting the game play, and all activity associated with the websites from within the boundaries of Mississippi or in locations where VGW has not been formally prohibited.

43.     Through these steps VGW is operating in the same manner that any brick-and-mortar casino on the ground in Mississippi would operate.  The only differences are that VGW may not have a building located on the ground in Mississippi where Plaintiff and other Mississippi citizens sit down to gamble and that VGW is not operating legally within Mississippi.

44.     VGW's Terms of Service state, "3.2 Gold Coin purchases made from within the states of Washington, Michigan, Montana, Connecticut, Nevada and Delaware in the United States of America will be voided."   Therefore, for all practical purposes transfers and payments are made to and from bank accounts within the state of Mississippi.  Plaintiff and the vast majority of Mississippi citizens playing VGW's games make payments to gamble just as if they are standing at a casino cage or casino table within the physical boundaries of Mississippi.

45.    In nearly all circumstances, whenever Plaintiff and other Mississippi citizens attempt to collect winnings of money from gambling on VGW's casino games, all VGW games mandate that prizes, or money paid to Plaintiff and other Mississippi citizens must be paid to a bank associated with Plaintiff and other Mississippi citizens' address and identifying information. For all practical purposes this means the vast majority of VGW's financial transactions with Plaintiff and other Mississippi citizens occur within the geographical boundaries of the state of Mississippi. This is identical to Plaintiff and other Mississippi citizens physically going to a casino cage to purchase chips, place bets, and collect gambling winnings. The only difference is that the transactions are being done electronically over the internet.

46.    The interactivity with VGW's websites expands from digital communications to the physical world as well. As a part of VGW's thinly veiled attempt to classify its illegal gambling operations as "sweepstakes" VGW offers Plaintiff and other Mississippi citizens the opportunity to send handwritten letters to VGW through the United States mail to request "Sweeps Coins". Plaintiff and other Mississippi citizens can use the Sweeps Coins to gamble on VGW's websites and redeem for dollars or money. However, all such letters must be sent from a physical location in Mississippi. Furthermore, if Plaintiff and other Mississippi citizens, who registered an account with VGW, send letters from outside of

Mississippi, the letters will be automatically rejected by VGW. This equates to VGW giving Plaintiff and other Mississippi citizens "comped" bets or free wagers, the same as may be done as if Plaintiff and the other Mississippi citizens are present at a brick-and-mortar casino in Mississippi. VGW offers this additional method of acquiring Sweeps Coins to misrepresent that VGW's games are a sweepstakes and simultaneously to induce Plaintiff and other Mississippi citizens to also spend money to make wagers or bets. However, if someone from the blocked areas of Washington, Idaho, Montana, Michigan, Connecticut, Delaware, or Nevada were to send these physical handwritten letters to VGW the letters would not be processed, and no Sweeps Coins would be issued. This is another example of VGW purposefully operating in the state of Mississippi, promoting use of the United States Postal Service from Mississippi and further expanding VGW's interactions with Plaintiff and other Mississippi citizens through the online world to the physical realm. In addition, VGW will send gifts of credits for Sweeps Coins to Mississippi citizens through emails, and even physically deliver gifts, such as small appliances or cakes to Mississippi citizens' homes to further try and entice Mississippi citizens to continue gambling on VGW's websites.

47.    VGW's highly interactive websites maintain continual contact with Plaintiff and other Mississippi citizens. When Plaintiff and other Mississippi citizens are allowed to play the casino games and gamble on VGW's websites, Plaintiff and

other Mississippi citizens submit wagers and payments of money from Mississippi

through the internet to VGW's websites.  In response VGW submits internet

communications back into Mississippi to Plaintiff and other Mississippi citizens, in

the form of video images of slot machines, scratch offs, and card tables like

blackjack and poker.  VGW sends animations of cards being dealt and slot machine

wheels spinning that notify Plaintiff and other Mississippi citizens whether their

wagers or bets have been successful.  These communications also reveal whether

Plaintiff and other Mississippi citizens have lost money and must continue making

bets to attempt to recoup their losses or win additional money.  These continuous

communications and wagering interactions back and forth between VGW and

Plaintiff and other Mississippi citizens constitute millions of transactions

conducted in Mississippi, which further establish jurisdiction over VGW,

especially since VGW has acknowledged that it has conducted gambling

transactions and purchases with at least 100 Mississippi citizens and received at

least $5,000,000 from Plaintiff and other Mississippi citizens.  In reality, the

transactions and purchases are likely closer to a hundred million or more.  VGW's

contacts with the United States and Mississippi are precisely the type of activity

that establish the minimum contacts sufficient to assert personal jurisdiction over

VGW in this case and satisfying the standards identified by the courts in these

cases. *Hardy v. Scandinavian Airlines Sys.*, 117 F.4th 252, 265 n.31 (5th Cir.

2024);  *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th at 226 (5th Cir. 2022) (en banc), *cert denied,* 143 S. Ct. 1021, 215 L. Ed. 2d 188 (2023); *see also Adams*, 364 F.3d at 651 (citing *World Tanker*, 99 F.3d at 723); *DISH Network, L.L.C. v. Elahmad*, No. 23-20180, 2024 U.S. App. LEXIS 5729, 2024 WL 1008585, at *2 (5th Cir. Mar. 8, 2024) (per curiam) (unpublished). *Fitch v. Wine Express, Inc.,* 297 So.3d 224 (2020); *See also, Compuserve Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996); *Noco Co. v. Shenzhen Valuelink E-Commerce Co.,* 550 F.Supp.3d 488 (N.D. Ohio 2021).

48.    In fact, VGW has recently expanded its interactive communications to include video transmissions of live dealers where actual individuals deal hands of blackjack and operate roulette wheels that reveal the results of the gamblers' wagers, conveying the impression that a Mississippi citizen is actually sitting in a brick-and-mortar casino and gambling when the citizen is on VGW's websites. Images supporting this contention are shown in paragraph 84 below.

49.    VGW's contacts with Plaintiff and other Mississippi citizens meet or exceed the minimum contacts recognized by the state of Mississippi and the United States Court of Appeals for the Fifth Circuit for VGW to be subject to personal jurisdiction within the state of Mississippi, as has been found by the Fifth Circuit Court of Appeals and other courts regarding similar activities in these cases. *Revell v. Lidov,* 317 F.3d 467 (5th Cir. 2002); *SportsCastr Inc. v. Sportradar Grp.,*

Civ. Act. No. 2:23-CV-00472-JRG, 2024 U.S. Dist. LEXIS 167277, 2024 WL

4219252 (E.D. Tex. Sept. 17, 2024) (nonresident defendant placed sports betting

video products in the 'stream of commerce' with the knowledge and intention they

would be used in forum state - Texas); *Tate v. RCI, LLC,* 2018, Civ. Act. No. H-17-

290, U.S. Dist. LEXIS 96598, 2018 WL 11673539 (S.D. Tex. June 8, 2018);

*Thompson v. Handa-Lopez, Inc.,* 998 F. Supp. 738 (W.D. Tex. 1998); *See,*

*Churchill Downs, Inc. v. Trout,* 979 F. Supp. 2d 746 (W.D. Tex. 2013); Neogen

*Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883 (6th Cir. 2002); *S.I.A. Limited, Inc.*

*v. Wingate,* 677 S.W.3d 487 (Ky 2023); *Commonwealth ex rel. Brown v. Stars*

*Interactive Holdings (IOM) Ltd.*, 617 S.W. 3d 792 (Ky. 2020).

50.     VGW has purposefully availed itself of the privilege of conducting business

within the state of Mississippi.  VGW electronically tracks the geographic location

of all visitors and wagerers by analyzing and checking the internet protocol address

of all visitors and wagerers.  VGW purposefully chooses to operate within the state

of Mississippi by allowing Plaintiff and other Mississippi citizens who are

confirmed to have Mississippi internet protocol addresses to access VGW's

gambling websites.  This is because VGW blocks access to its websites from other

geographic regions such as Washington, Idaho, Montana, Michigan, Connecticut,

Delaware, and Nevada, states where VGW has been ordered to cease and desist

operating.  Therefore, VGW is intentionally and purposefully deciding to send its

internet communications into the state of Mississippi and receive internet

communications back from Plaintiff and other Mississippi citizens.

51.    VGW knows that it is violating Mississippi's gambling laws and yet it

intentionally and purposefully continues its illegal conduct within the state of

Mississippi causing damages to Plaintiff and other Mississippi citizens who have

incurred losses as a result of VGW's illegal gambling business.  Therefore, VGW is

subject to the jurisdiction of this Court and the courts of Mississippi.

52.    The state of Mississippi has an important public policy interest in

adjudicating this case due to the brazen constant illegality VGW has demonstrated

and therefore jurisdiction and venue of this Court and the courts of Mississippi is

appropriate.

53.    VGW attempts to escape the jurisdiction of this Court and the Mississippi

courts by including class waivers, forum selection and choice of law clauses in

VGW's Terms of Service.  However, these Terms of Service are illegal gambling

contracts which are "utterly void" according to MS Code § 87-1-1.  Even if any

such clauses in these illegal Terms of Service are severed and analyzed by

themselves, they are "utterly void".  Therefore, the Terms of Service and any

allegedly severable clauses including but not limited to arbitration agreements,

forum selection, and choice of law clauses are "utterly void" and unenforceable

and VGW is therefore subject to the jurisdiction of this Court.  Further, such

clauses are unenforceable because they are based on the consideration of "illegal gambling".

54.    As further outlined in paragraphs 55 – 60 and paragraphs 82 – 130 below, VGW has purposely operated within Mississippi by utilizing a sophisticated interactive website that maintains constant contact and back and forth interaction with Plaintiff and other Mississippi citizens.  Also, VGW's business, revenue, and profits are contingent upon this constant contact and interactivity.  In summary, VGW is subject to jurisdiction of this Court and the Mississippi courts and venue within the state of Mississippi because the claims (1) arise from VGW's activities; (2) the non-resident defendants, VGW, "purposefully availed" itself or themselves of the privilege of conducting activities within the forum; and (3) the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice" in accordance with *Admar Int'l Inc. v. Eastbrook, L.L.C.,* 18 F.4th 783 (5th Cir. 2021).

## **INTRODUCTION**

55.    VGW HOLDINGS, as admitted in its audited financial statements filed with the Australian Securities & Investments Commission, actively owns and operates five companies as its agents or alter egos to conduct gambling operations in the state of Mississippi.  These companies are VGW MALTA, VGW LUCKYLAND, VGW GP, VGW HOLDINGS US INC., and VGW US INC.  These companies

claim to be video game development business entities and operators of a "social casino". In reality, VGW has created, and operates popular virtual internet gambling casinos that market internet gambling casino games under the names "Chumba Casino" (hereinafter also referred to as "Chumba"), which is operated by VGW MALTA, "LuckyLand Slots" (hereinafter also referred to as "LuckyLand"), which is operated by VGW LUCKYLAND, and "Global Poker", operated by VGW GP. Collectively, these sites are also referred to as "the games" or "casino games" when the websites are described in general terms.

56.   In these casino games VGW offers a multitude of electronic versions of slot machines, blackjack, poker, and other games of chance. The games are available to play online at chumbacasino.com for Chumba or VGW MALTA, luckylandslots.com for LuckyLand or VGW LUCKYLAND, and globalpoker.com for Global Poker or VGW GP, which, in addition to poker, provides both games of blackjack and slot machines.

57.   VGW has misrepresented to Plaintiff and the other citizens of Mississippi that VGW operates legal video game or arcade game websites permitting just for fun gameplay. In reality, VGW intentionally and purposefully operates websites that are illegal, unregulated, and unlicensed internet gambling casinos where Mississippi citizens wager and lose real money.

58.    VGW HOLDINGS through VGW GP operates slot machines and blackjack games, like Chumba and LuckyLand.  In addition, VGW HOLDINGS through VGW GP, operates an on-line poker game where VGW GP takes a percentage of the money wagered by Plaintiff and other Mississippi citizens that ranges from 2.5 percent to 15 percent in what is identified on globalpoker.com as "the rake".  This constitutes operating a gambling transaction or game of chance for which VGW wins money from each hand of poker.

59.    All of VGW's games are virtually identical to gambling or games of chance that exist in legally permitted, but highly regulated brick-and-mortar physical gambling casinos within Mississippi.  The difference is that VGW's casino games are not legally permitted under Mississippi law.

60.    In exchange for payment of "real money" or dollars from Mississippi citizens, VGW sells virtual currency, or "coins" that can be used to wager on games of chance.  VGW has established a scheme to deprive Mississippi citizens of their money or dollars by providing the citizens the potential to win and collect real money prizes or dollars.  VGW uses these coins to both give Mississippi citizens a false sense of security, while hiding that VGW is engaging in real money gambling.  Likewise, VGW has used this scheme to attempt to mislead regulators about the true nature of VGW's operations.

**VGW Formation, History, and Intent to Create Internet Online Gambling**

61.    For over a decade VGW has sought to market and operate online gambling within the United States and Mississippi.  As early as 2012, the billionaire founder/CEO of VGW HOLDINGS, Laurence Escalante, looking for "angel investors", expressed his intent to create virtual gambling casinos that initially would offer United States citizens the opportunity to gamble online with "real money" outside the United States, and at that time purportedly within the United States with "virtual currency", emphasizing, "…This is not a toy; it's a real casino. So, ladies and gentlemen, that's just a taste of some of the potential to us when we combine the world of gaming with gambling." (Exhibit "B")

62.    Laurence Escalante outlined his plan during a televised or recorded conference at the "Launch Festival, March 7 and 8, 2012, at the San Francisco Design Center", before a group of tech investors.  A video presentation of Laurence Escalante's presentation can be found at  https://www.youtube.com/watch?v=M-ekhp92V-0&list=PPSV, and a written version of this video presentation is attached as Exhibit "B".   From 2012 through the present VGW and Laurence Escalante have advertised that they look to combine "virtual currency and gambling".  For many years VGW has targeted Mississippi citizens and operated online real money gambling casinos within Mississippi, a market known for having extensive restrictions, licensing, and regulations regarding gambling.

63.    VGW's intentional disregard for the laws of the state of Mississippi has resulted in at least tens of millions of dollars in illegal gambling winnings going to VGW and ultimately Laurence Escalante.

<u>**FACTUAL ALLEGATIONS**</u>

**VGW's Predecessors and Model: Illegal Brick-and-Mortar "Sweepstakes Cafés"**

64.    In the early 2010s, across the United States, the spread of "Internet Sweepstakes Cafés" or "Internet Sweepstakes Facilities" (hereafter "sweepstakes cafés") became an epidemic.  Mississippi was no exception to this.

65.    These illegal gambling operations would claim to sell internet time or phone cards to Mississippi citizens and, as part of an alleged "sweepstakes promotion", Mississippi citizens would receive "sweepstakes points" or "sweepstakes credits". These "points" or "credits" – which were redeemable for cash – would be used to wager and gamble on casino style games of chance that were played on computer terminals through the internet at the sweepstakes cafés.

66.    This ploy to circumvent gambling laws was highly lucrative for a time, despite the scheme clearly being illegal gambling under Mississippi law.

67.    In 2013, the Mississippi Legislature passed HB 974, which became MS Code § 97-33-8, and established that these so called "sweepstakes promotions" and "internet sweepstakes cafes" like VGW's are in fact illegal gambling schemes of

chance.  Therefore, for more than a decade these so-called sweepstakes promotions and internet sweepstakes cafés have been recognized as illegal gambling under MS Code § 87-1-5.

68.     In 2015 charges were brought against operators of the Mississippi sweepstakes cafés and in *Moore v. State,* 309 So.3d 7 (Miss. App. 2020) the Court of Appeals of Mississippi recognized that businesses that provide customers access to computer games or video games of chance that resemble gambling programs and provide payout of cash prizes are illegal gambling operations under Mississippi law and their operations constitute RICO (Mississippi Racketeer Influenced and Corrupt Organizations Act, MS Code §§ 97-43-1 – 97-43-11) violations.

69.     With the passage of HB 974 and amendments to MS Code § 97-33-8, Mississippi signaled the demise of sweepstakes café gambling.

70.     However, innovation is a constant where there are financial incentives, and criminal activities are not exempt from that fact.  These gambling sweepstakes café operations moved out of the strip malls and bars that they used to inhabit and now they call the internet home.

71.     VGW pioneered this migration of "sweepstakes casinos" to the world wide web and for many years VGW has knowingly, intentionally, willfully, and illegally

won billions of dollars from its gambling operations, while also lying to the public
and proclaiming that VGW's operations are legal.

**VGW's Purposeful Replication of the Sweepstakes Café Business Model**

72.    VGW parrots the same claim that brick-and-mortar internet sweepstakes
facilities, formerly known as sweepstakes cafés, tried to justify their gambling
operations across the United States, including in the state of Mississippi.  However,
legislators, judges, and juries roundly rejected this argument.  The only material
difference between VGW and the sweepstakes cafés is that VGW now operates
exclusively on the internet rather than conducting gambling on the ground in
Mississippi.

73.    In a January 4, 2016, prospectus for a sale of stock, VGW admitted its
Chumba website's business model copied the illegal "sweepstakes cafés" that
proliferated Mississippi and throughout the United States. (Exhibit "C")

74.    VGW compared its market opportunity with the size of the sweepstakes café
market.  VGW even claimed there is "significant opportunity" in adopting this
sweepstakes model.

75.    The fact this prospectus was released in 2016 is noteworthy because three
years before, in 2013, MS Code § 97-33-8 prohibited the operation of sweepstakes
cafés and defined these sweepstakes cafés to be illegal gambling.  Knowing that
sweepstakes cafes were illegal, VGW knowingly and intentionally set out to

attempt to thwart Mississippi law by creating an internet sweepstakes cafe intended to operate on an enormous scale and cover all of the United States and Canada. VGW violated, and continuously violates, Mississippi law by creating and operating an internet sweepstakes café model online.

76.    For example, VGW's prospectus contains a report that was prepared by H2 Gambling Capital, which is described as "the leading authority regarding market intelligence on the global gambling industry", further showing VGW's intention to create nationwide illegal gambling.

77.    The prospectus refers to "gambling" innumerous times and notes that "The US, despite significant prohibition, remains by far the largest gaming market in the world."

78.    The prospectus refers to "real-money" on many occasions and says that VGW is operating at the "convergence of social casino and real-money gaming offerings".

79.    Furthermore, a 2015 press release sanctioned and approved by VGW states:

> …VGW is a developer and operator of social casino games with
> sweepstakes cash prize gameplay, which provides for the payout of
> cash prize winnings from casino games.  Sweepstakes gameplay
> entails a real-money, online prize gaming alternative for all 50 states
> of the United States, where online gambling is largely prohibited. …

 "develops and operates proprietary technology in real-money gaming, enabling cash-prizes to be paid to international players, particularly those located in the

United States, via its social casino games." And that "…VGW's strategy is to: continue to deploy sweepstakes gameplay technology in the United States and to expand the offering across other key gaming product lines, including: casino, lottery, poker and sports… ." (Exhibit "D")

80.     The same press release admitted that "…VGW operates a sweepstakes social casino, targeting the global casino market, particularly the unrealised United States real-money gaming market. …". (Exhibit "D" (Highlights))

81.     These facts show that at least since 2012 VGW has intentionally, purposefully, and continually taken steps to target Plaintiff and other Mississippi citizens with its gambling websites. VGW clearly knew that sweepstakes cafés had been banned in Mississippi and throughout the United States. Likewise, VGW knew that it was using its online model to operate as a gambling organization, which it knew was already declared illegal under Mississippi law.

**VGW's Gambling Offerings and Games of Chance**

82.     All VGW's games are games of chance. VGW markets and runs games on its websites that are identical, or virtually identical to games of chance that can be found in brick-and-mortar casinos.

83.     VGW's games of chance include, but are not limited to, classic casino games such as slot machines, blackjack, roulette, and poker. VGW's online poker games, offered through Global Poker, are exactly like poker games in the physical world,

but online.  VGW's games possess a user interface identical to games of chance that may be found in brick-and-mortar casinos.  The images below are a sampling of games that are found on VGW's websites.









84.     VGW also offers casino games of chance with a live dealer as well.  The images below are a sampling of games with a live dealer, that are found on VGW's websites.







85.    VGW has also boldly ventured into marketing and selling lottery scratch off

card games, in direct competition with state-controlled lotteries, as shown below.







86.    VGW's games, with the potential exception of their new offerings with live dealers, utilize algorithms to assign results after the wager is placed.  Once a user, Plaintiff, or other Mississippi citizen presses a button on a computer, phone, tablet, or electronic device of any kind, VGW's computer servers display entertaining game images to Plaintiff and other Mississippi citizens / bettors and the result of the game is decided by code on VGW's computer servers.

87.    On VGW's websites once Plaintiff and other Mississippi citizens spin the slot machine by pressing a button on Plaintiff and other Mississippi citizens' device communicates and sends information to VGW's servers.  VGW's servers then execute the games' algorithms that determine the spin's outcome.  None of the outcomes in VGW's slot machine games depend on any amount of skill to determine their outcomes – as all outcomes are based entirely on chance.

88.    In VGW's blackjack and poker, Plaintiff and other Mississippi citizens make choices and wagers coins in a manner that is identical, or nearly identical, to placing bets at a casino blackjack table or poker table.  However, it is unknown if the player's choices or decisions affect the outcome as well as the chances of winning, due to the lack of transparency regarding the algorithms employed by VGW.

89.    When playing VGW's games of chance, Plaintiff and other Mississippi citizens put at risk, or wager, money or things of value in the hopes of winning

more money or additional things of value. VGW operates an obvious illegal gambling business that is not permitted or licensed in the state of Mississippi.

90.    VGW maintains win and loss records and account balances for Plaintiff and each Mississippi citizen. Indeed, once VGW's algorithms determine the outcome of a wager, VGW displays the outcome to Plaintiff and other Mississippi citizens, VGW then adjusts Plaintiff and other Mississippi citizens' account balance. VGW keeps detailed records of each wager, outcome, win, and the loss for every player of the games.

91.    VGW maintains extremely detailed records of the identity of each individual user of VGW's sites. To create an account users, including Plaintiff and other Mississippi citizens, must verify their identity and address, and provide a copy of photo ID, such as a driver's license. VGW also maintains detailed records of every individual purchase that Plaintiff and other Mississippi citizens make and every redemption that Plaintiff and other Mississippi citizens receive. VGW knows exactly how much Plaintiff and each individual Mississippi citizen has lost or won on VGW's websites and the outcome of every single wager every Mississippi citizen has made.

**VGW's Illegal Gambling Scheme and Pretextual Claim That It Is a Sweepstakes**

92.    VGW attempts to thwart Mississippi law by boldly and falsely claiming that the VGW websites are legal operations and part of a "social casino" that is offering legally permitted "sweepstakes promotions".

93.    VGW's attempt to camouflage its illegal gambling scheme hinges upon its promotion of a two-tiered system of "coins".

94.    On all its illegal gambling websites, VGW claims to sell "Gold Coins", which have no redeemable value, to Plaintiff and other Mississippi citizens.  These Gold Coins may be used to play casino games on VGW's websites, and their alleged value is the extension of entertainment by allowing Plaintiff and other Mississippi citizens to play the games just for fun.  Gold Coins may be used only to play the games on the sites for entertainment.

95.    However, when selling these Gold Coins VGW also issues Plaintiff and other Mississippi citizens an allocation of what VGW calls or categorizes as "Sweeps Coins" (referred to collectively as the "coins").

96.    Sweeps Coins have explicit monetary value.  Sweeps Coins may be redeemed for cash to the Plaintiff's or other Mississippi citizens' bank account or digital wallet, or as gift cards at an exchange rate of 1:1 (one "Sweeps Coin" being equivalent to $1).  Therefore, Sweeps Coins are synonymous with dollars.  When using Sweeps Coins to wager on VGW's games of chance, it is the exact same as using dollars to wager on games of chance in a brick-and-mortar casino.  Wagering

Sweeps Coins on games of chance is real money gambling and getting Plaintiff and other Mississippi citizens to wager Sweeps Coins is the goal of VGW.

97.    When compared to the illegal sweepstakes cafés that VGW copied, the Gold Coins are analogous to the internet time or phone cards and the Sweeps Coins are analogous to the sweepstakes credits used for wagering and which could be redeemed for cash or money.

98.    The sale of Gold Coins is nothing more than a pretext for the purchasing of, and wagering with, Sweeps Coins in what amounts to a real money online gambling casino – the exact type of operation that the Mississippi Legislature has prohibited.

99.    VGW makes money by taking the other side of Plaintiff or other Mississippi citizens' / bettors' wagers (betting against the Mississippi citizens) in all their games, except for the poker games that exist on VGW GP where VGW makes money by taking a "rake" (a percentage of every pot or wagers made in a hand of poker) or by charging a fee for organizing poker tournaments.

**VGW's Paper Thin Effort to Camouflage Its Illegal Gambling Operations**

100.    Plaintiff and other Mississippi citizens may play games of chance on VGW's sites in what VGW refers to as "standard mode", or "standard play" using Gold Coins.  Plaintiff and other Mississippi citizens may also play the exact same games of chance in what VGW refers to as "promotional mode" or "promotional play"

using Sweeps Coins.  Plaintiff and other Mississippi citizens may switch between these two modes easily and as frequently as they would like.  An example of the toggle button (from Chumba) permitting this switching is shown below:



101.   It is important to note that it is only possible to play VGW's games through the wagering of either Gold Coins or Sweeps Coins.  It is impossible for Plaintiff or other Mississippi citizens to play VGW's games when Plaintiff or other Mississippi citizens do not have a balance of coins in an account with VGW. Every one of VGW's games requires a wager to participate.

102.   When playing in standard mode, Plaintiff and other Mississippi citizens gamble or wager Gold Coins and can only win or lose Gold Coins.  When playing in promotional mode, Plaintiff and other Mississippi citizens gamble or wager Sweeps Coins and can only win or lose Sweeps Coins.

103.   When Plaintiff and other Mississippi citizens visit VGW's websites for the first time, Plaintiff or other Mississippi citizens are awarded a nominal allocation of "free coins".  Plaintiff or other Mississippi citizens also receive coins as a free daily bonus once a day when logging in to their accounts.  An example of the

popup message for this "Daily Bonus" (from Chumba) is below:



104.   As can be seen above, the Daily Bonus of Gold Coins is 200,000, which can only be used to play the casino games.  However, the Daily Bonus of Sweeps Coins is much lower or "1", which is the equivalent of $1 dollar that can be redeemed for cash, but only if Plaintiff or other Mississippi citizens wager the Sweeps Coin to play the casino games and don't lose the 1 Sweeps Coin or win more Sweeps Coins.

105.   Until recently, in order to continue playing in the "standard mode", Plaintiff or other Mississippi citizens must either win more Gold Coins from the casino games or replenish their losses by purchasing more Gold Coins.  However, VGW has recently modified this dynamic.  Now, when a Mississippi citizen depletes his or her balance of Gold Coins VGW perpetually provides the Mississippi citizen

with free Gold Coins but no free Sweeps Coins. This further emphasizes that Gold Coins have zero monetary value to VGW and the Mississippi citizen – Gold Coins are given away for free. The Gold Coins exist only as a pretext and to entice Mississippi citizens into purchasing Sweeps Coins.

106.   When "standard mode" play with Gold Coins is compared to playing in "promotional mode" with Sweeps Coins, it is clear that accumulating Sweeps Coins is the be all and end all of VGW's platforms. There appears to be no evidence of testimonials by consumers of how they have won Gold Coins from VGW's websites. However, the internet contains numerous examples of testimonials from happy gamblers of how they have won Sweeps Coins, which they have redeemed for money. For example, message boards such as Reddit are populated with players discussing wins and losses of Sweeps Coins. YouTube "influencers", who are sponsored by VGW, have recorded themselves playing with Sweeps Coins for years. LuckyLand's own website shows consumer testimonials telling of their large cash prizes consumers / bettors throughout the United States have won through the wagering of Sweeps Coins. A sample of such testimonials is shown below:



Likewise, video advertisements such as the one below from Facebook in October 2023 display gigantic sized checks to emphasize how consumers can win big money on VGW's sites. This money is only won through wagering Sweeps Coins, not Gold Coins.



Global Poker's own website displays wagerers holding the same style of giant sized checks.



Chumba Casino also advertises on social networks successful gamblers holding gigantic checks to incentivize Mississippi citizens to wager Sweeps Coins on their website and attempt to win real money.



Chumba even advertises on social networks that they have ***"helped 50 people become millionaires."*** from gambling Sweeps Coins, not Gold Coins.



107.   Indeed, VGW advertises that the websites function as gambling operations since the sites call themselves "Chumba **Casino**", "LuckyLand **Slots**" and "Global **Poker**".  Furthermore, shown below is LuckyLand's own logo where it prominently displays stacks of cash with "SC" (an abbreviation frequently used by VGW for Sweeps Coins) written on them, emphasizing the importance of the Sweeps Coins versus Gold Coins.



108.    When Plaintiff and other Mississippi citizens play VGW's games they wager coins on games of chance with the hopes of winning more of the coins that they wagered.  Routinely, after they begin playing, Mississippi citizens quickly lose their allotments of coins.  This is because a Mississippi citizen is playing games of chance that are skewed heavily in the favor of VGW's casino operations – just like in brick-and-mortar casinos.  Furthermore, as with brick-and-mortar casinos, the longer a Mississippi citizen plays VGW's games the more likely VGW will ultimately win, and the Mississippi citizen will exhaust the coins.  To make matters even worse, VGW, unlike brick-and-mortar casinos, is not subject to a single regulation to ensure fair and legal practices.

109.    When playing with Sweeps Coins – which is the equivalent of playing with real dollars since Sweeps Coins may be redeemed for real cash and cash equivalents – after Plaintiff or other Mississippi citizens lose all the Sweeps Coins, VGW immediately informs Plaintiff or other Mississippi citizens that they have insufficient coins to place a wager.  On Chumba users are presented with the below message instructing them to purchase more Gold Coins – as a mechanism to receive Sweeps Coins.



On LuckyLand the user is immediately redirected to the store, as shown below:



On Global Poker the users receive the below message telling them to go purchase coins.



The message is clear.  To keep wagering Sweeps Coins, spending money on Gold Coins is the quick and preferred way to go about it.  What Plaintiff and other Mississippi citizens really value and are actually purchasing are Sweeps Coins.

110.    When playing on Chumba, upon clicking "Buy Gold Coins", Plaintiff and other Mississippi citizens are redirected to the "Store" where they can purchase more Gold Coins.  The majority of the purchase packages also offer Sweeps Coins as part of the purchase of Gold Coins.  The Sweeps Coins amounts are prominently highlighted by VGW in green, likely intended to symbolize the color of money.

Shown below is an image of the Chumba Store.



111.   In LuckyLand, after exhausting their Sweeps Coins balance, Plaintiff and

other Mississippi citizens are directed to the "LuckyLand Store" (image shown in

paragraph 109) to purchase more Gold Coins.  Every purchase package of Gold

Coins provides Sweeps Coins which are likewise prominently displayed in green.

112.   On Global Poker, when Plaintiff and other Mississippi citizens no longer

have any Sweeps Coins available to wager, they are directed to the store to

purchase more coins as well.  It is clear that when purchasing Gold Coins

Mississippi citizens receive Sweeps Coins.  An image from Global Poker is shown

below:



113. In the VGW sites and stores Plaintiff and other Mississippi citizens are offered multiple options to purchase coins and purchase packages can vary. However, for Chumba, prices generally range from $1.00 for 200,000 Gold Coins to $1,000 packages for 400,000,000 Gold Coins; for Global Poker $2 can be used to purchase 10,000 Gold Coins, up to $500 for 2,600,000 Gold Coins; for LuckyLand purchase packages range from $9.99 for 40,000 Gold Coins to $299.99 for 2,100,000 Gold Coins. So, there is enormous variance between sites in how much a $1.00 payment will net in terms of Gold Coins.

114. However, the amount of Sweeps Coins delivered in these packages is much more consistent as it tends to be approximately a 1:1 ratio to the "real money" purchase price Plaintiff or other Mississippi citizens pay – with some extra Sweeps Coins given when Plaintiff or other Mississippi citizens spend greater quantities of

dollars. For example, on Chumba and LuckyLand a $300 purchase package would produce 315 Sweeps Coins; on Global Poker a $500 package would produce 515 Sweeps Coins. This small extra amount of Sweeps Coins compared to the dollars spent by Mississippi citizens is similar to brick-and-mortar casinos giving "comps" of meals, hotel stays or free wagers to Mississippi citizens who spend more money in the brick-and-mortar casinos. VGW also often throws in, or comps, a bonus of extra Sweeps Coins to the Mississippi citizens so they will play more. This also shows that it is the Sweeps Coins that have value and are what Mississippi citizens are purchasing.

115. The larger the purchase package the more extra / "comped" Sweeps Coins the Mississippi citizen receives. For example, a purchase package that costs $5.00 for Gold Coins will come with 5.05 Sweeps Coins, a difference of 1%. But a package that costs $300 for Gold Coins comes with 315 Sweeps Coins, a difference of 5%. VGW rewards those players who purchase more expensive packages with extra Sweeps Coins, thus stimulating more purchases and more play. This is to incentivize players to purchase more, gamble more and inevitably lose more money.

116. It is clearly no mistake that at the time of purchase of Gold Coins, the amount of Sweeps Coins available to Plaintiff or other Mississippi citizens is nearly 1 to 1 for the dollars that the Plaintiff or other Mississippi citizens spend.

Obviously, the Plaintiff or other Mississippi citizens would not be spending, for example, $300 to receive 100 Sweeps Coins, much the same way that no one at a legally permitted Mississippi brick-and-mortar casino would pay $300 to receive only $100 in casino chips.

117.    VGW's websites accept payment of dollars in exchange for coins through many forms, including, but not limited to, debit cards, credit cards, bank transfers, gift cards and digital wallet transactions.  An example of the payment options is shown below.



118.    Once Plaintiff and other Mississippi citizens start wagering Sweeps Coins on VGW's websites and casino games of chance, and have a sufficient balance, the redemption button is prominently displayed and clearly identifies that the Plaintiff and other Mississippi citizens can redeem the Sweeps Coins for cash or cash equivalent gift cards.  Redeeming Sweeps Coins for dollars is how Plaintiff and other Mississippi citizens can "cash out" – exactly like redeeming casino chips for

dollars at a brick-and-mortar casino.  Below are images showing the redemption

process on Chumba Casino.  The process is materially identical for LuckyLand and

Global Poker.







119.    Unlike legally permitted casinos in Mississippi, VGW uses unpermitted

techniques to force Plaintiff and other Mississippi citizens to play VGW's games

and eventually lose their Sweeps Coins balance. These techniques include

establishing restrictions on how and when Sweeps Coins can be redeemed and

turned into money.  For example, on Chumba and Global Poker the minimum permitted redemption amount is 100 Sweeps Coins to be redeemed for $100; on LuckyLand, the minimum is 50 Sweeps Coins to be redeemed for $50.  Therefore, any balance below those thresholds remains stuck on the site and cannot be redeemed, withdrawn or deposited.  This holding of Sweeps Coins captive is VGW's way to force Plaintiff and other Mississippi citizens to continue gambling and more likely lose Sweeps Coins.  Likewise, VGW also permits only one redemption of Sweeps Coins per time that the Plaintiff and other Mississippi citizens are utilizing the websites.  Further, VGW has implemented weeks long delays to "approve" and "process" redemptions of Sweeps Coins.  These restrictions are designed to further entice Plaintiff or other Mississippi citizens to cancel their redemption requests and continue playing the casino games.  But these techniques or restrictions aren't even legal at brick-and-mortar casinos in Mississippi where casino gambling may be permitted and is highly regulated.

120.  Winning any actual money through accumulating Sweeps Coins is often a pipe dream, however, because these games of chance are not subject to regulation in the United States (VGW MALTA and VGW GP claim to be regulated in the Island of Malta), and the games certainly heavily favor VGW.  In fact, VGW's Terms of Service state that it is the Plaintiff's or other Mississippi citizens' responsibility to check on the odds of each game.  However, in many cases, these

odds are nowhere to be found.  Furthermore, VGW also states that VGW may change the odds at VGW's discretion whenever it chooses.  VGW's games are therefore a black box that are not regulated or scrutinized in Mississippi or anywhere in the United States for that matter.  In fact, this is by design because Mississippi regulations, if they were followed, would not allow VGW to operate in the state.

121.   All games on VGW fit the Mississippi statutory definition of gambling as defined in MS Code §§ 87-1-5 and 97-33-8.

122.   Playing games of chance on VGW's websites is clearly real money gambling as Sweeps Coins can be redeemed for cash or real money with an exchange rate of one Sweeps Coins equal to one dollar.  This gambling of Sweeps Coins, the dollar equivalent, is how VGW makes its profits.

123.   VGW has thus devised a scheme whereby players can utilize Sweeps Coins in a manner indistinguishable from a brick-and-mortar casino, but where VGW has misled Plaintiff and other Mississippi citizens into believing that they are playing games that are permitted by Mississippi law.  In fact, VGW's websites knowingly, willfully, and prominently advertise the falsehood that the sites are operating legally in the United States and Mississippi.  This false claim is included in VGW's websites' Terms of Use for each website.

**VGW's Gambling Operations Utilize Sweeps Coins to Attempt to Avoid Mississippi Law and Reap Gambling Profits From Mississippi Citizens**

124.   VGW may claim it is not a gambling operation but is a sweepstakes. VGW's claim is that the Sweeps Coins it markets to Plaintiff and other Mississippi citizens have no value because the Sweeps Coins cannot be redeemed for money by Plaintiff or other Mississippi citizens at the time of purchase or acquisition.

125.   VGW's claim that "…Sweeps coins cannot be purchased and [have] no inherent value. …" *https://www.chumbacasino.com/about-us* is extremely disingenuous and contrary to VGW's own advertisements.  The Gold Coins purchase packages sold to Plaintiff and other Mississippi citizens prominently display the amount of Sweeps Coins the Plaintiff and other Mississippi citizens receive, VGW's websites advertise how Sweeps Coins can be redeemed with payment of money from VGW being sent directly to Plaintiff or other Mississippi citizens' bank accounts, digital wallets, or gift cards, where 1 Sweeps Coins is equal to 1 dollar.  VGW's advertising strategy focuses on showing winners of large amounts of Sweeps Coins.

126.   As a part of VGW's gambling scheme and attempt to maintain a façade of legality and attempt to present itself as a legal sweepstakes, Plaintiff or other Mississippi citizens can accumulate Sweeps Coins in multiple ways:

a.  By receiving Sweeps Coins upon the purchase of specifically

marked packages of Gold Coins;

b.  By entering "Sweeps Coins no-cost give away contests" on the

games' Facebook pages;

c.  By sending a request letter through the United States Postal Service

to VGW MALTA, VGW LUCKYLAND, and VGW GP, respectively;

and,

d.  As a "Daily Bonus" given when logging on to the players account

(once per day). *https://www.chumbacasino.com/sweeps-rules*

Plaintiff or other Mississippi citizens, however, are highly incentivized toward

option "a."  This is because option "a" is instantaneous and allows large amounts to

be purchased.  Whereas the other options vary from very difficult and slow (taking

months to write, send letters and receive credits for sending a mail request) to very

small (only receiving 1 Sweeps Coins per day from the "Daily Bonus").  The

purchase of Gold Coins is the easiest and quickest way for Plaintiff and other

Mississippi citizens to obtain Sweeps Coins and serves as a pretext to sell Sweeps

Coins and facilitate real money gambling.  VGW uses options "b.", "c.", and "d."

to attract customers but the primary motivation is so VGW can attempt to argue no

purchase is necessary and therefore there is no consideration; sweepstakes cafés futilely attempted this same tactic and argument.

127.   Plaintiff and other Mississippi citizens are required to wager their Sweeps Coins before they are permitted to redeem Sweeps Coins.  In its Terms of Service, VGW includes a link to its "Sweeps Rules" which VGW claims governs its "sweepstakes promotions" (https://www.chumbacasino.com/sweeps-rules) where VGW claims that it is operating legally because Sweeps Coins are unable to be redeemed before wagering and therefore have no value.  Only after wagering Sweeps Coins and, in the unlikely scenario that Plaintiff or other Mississippi citizens win the wager, do the Sweeps Coins that are won have monetary value and can be redeemed.  In VGW's own words in their Sweeps Rules, the Sweeps Coins "…that have been won through game play can then be redeemed for a prize with a value equal to US $1.00 per SC [Sweeps Coin]."  This is VGW's way to force Plaintiff and other Mississippi citizens to wager and risk losing money.  In other words, Plaintiff and other Mississippi citizens are required to play the games of chance or gamble on VGW's site with Sweeps Coins with a 1-time playthrough in order to later redeem the Sweeps Coins and collect a prize of cash or cash equivalents.

128.   VGW may claim that the award of Sweeps Coins to Plaintiff or other Mississippi citizens is like an award of legitimate and legal sweepstakes prizes.  In

reality, however, Plaintiff and other Mississippi citizens must either purchase Sweeps Coins or otherwise provide some monetary consideration to obtain Sweeps Coins, whether in the form of direct purchases of Gold Coins or by expending the costs of preparing and mailing in requests to VGW.  Any other methods of obtaining Sweeps Coins provide only nominal amounts of Sweeps Coins.  In other words, as in the case of legally permitted brick-and-mortar casinos, Plaintiff and other Mississippi citizens are only able to obtain Sweeps Coins in much the same manner as a customer purchasing chips at the brick-and-mortar casino.  Likewise, except for direct purchases of Sweeps Coins, VGW can and does arbitrarily limit the bonuses of Sweeps Coins upon purchases of Gold Coins to certain Mississippi citizens.

129.   VGW often arbitrarily rejects submissions of mailed requests for Sweeps Coins, contrary to the normal, legitimate, sweepstakes process.  VGW also frequently deactivates the accounts of Mississippi citizens who submit mailed requests for Sweeps Coins and gives no explanation for doing so.

130.   Plaintiff and other Mississippi citizens are encouraged by VGW's businesses to focus on wagering Sweeps Coins so that they may win "real money" in the form of winning more Sweeps Coins.

**Legal Sweepstakes Compared to VGW's Illegal Gambling Business**

131. An example of a legal and legitimate sweepstakes is the famous McDonald's Monopoly sweepstakes where, in exchange for purchasing a sandwich or drink, the consumer has a chance to win a prize.

132. A legal and legitimate sweepstakes is a limited-term event, designed to attract consumer attention and to expire after a few weeks or months. Whereas VGW – exactly like the sweepstakes cafés VGW was modeled after – offers perpetual "sweepstakes" and wagering to earn the perpetually offered "cash prizes". The VGW sweepstakes are the entire reason the business exists.

133. A legal and legitimate sweepstakes is intended to increase consumer awareness and sales of its products – such as hamburgers, fries, and sodas. VGW, by contrast, claims to be selling the Gold Coins as its primary product. However, customers amass gigantic totals of unused Gold Coins while wagering with Sweeps Coins. Furthermore, VGW's own marketing campaigns and marketing materials ignore the Gold Coins while emphasizing the Sweeps Coins.

134. A legal and legitimate sweepstakes pays out a trivial share of its revenue in prizes because the sponsor's business is selling other products, not offering wagers on chance. However, according to VGW's audited financial statements, VGW pays out billions of dollars annually representing a casino-like percentage of consumer purchases/deposits.

135.   VGW operates an illegal gambling business and not a legal and legitimate promotional sweepstakes.

**VGW's Casino Games and Illegal Scheme of Chance Cause Immense Losses to Citizens of Mississippi:**

136.   VGW proactively defrauds Plaintiff and other Mississippi citizens because VGW advertises that its operations are legitimate and legal.  VGW publishes the intellectually dishonest claim that VGW does not operate gambling platforms. VGW claims to operate a "social casino" which does not allow real money gambling; VGW claims that in conjunction with the "social casino" VGW merely offers "sweepstakes promotions" that provide "cash prizes".  This is the same attempted scheme that the previously described brick-and-mortar sweepstakes cafés unsuccessfully argued.

137.   In reality, VGW knowingly and willfully operates what constitutes an illegal gambling enterprise.  The Terms of Service across VGW's various sites further defraud Plaintiff and other Mississippi citizens by stating that citizens will not be allowed to play on VGW's platforms in states where they are prohibited.  However, VGW claims that Mississippi permits VGW's operations when it knows that to be untrue.

138.   VGW's audited financials show VGW spends hundreds of millions of dollars advertising VGW's platforms and, in such advertisements, erroneously

advertise its own legality and thus VGW has defrauded and manipulated Plaintiff and other Mississippi citizens into engaging in illegal gambling and losing money.

139.   VGW uses targeted advertising across social networks, advertises on search engines such as Google, sponsors YouTube gambling channels and more, to entice Plaintiff and other Mississippi citizens to gamble on VGW's platforms.  For example, VGW has sponsored Ferrari's Formula One racing team and has become a sponsor of a NASCAR racing team, 23XI – owned by basketball legend Michael Jordan.  Furthermore, VGW hires celebrities, such as Ryan Seacrest, DJ Khaled, and famous athletes Michael Phelps, Karl Anthony Towns, and Paul George (shown below) to create a veneer of legitimacy – exactly like infamous illegal gambling sites Full Tilt Poker and PokerStars used to do before those sites were shut down in the United States.









≡  ▶ YouTube          ryan seacrest chumba                    ✕  🔍  🎤                    🔔  ●

**Fall in love with Chumba this Valentine's!**

233 views · 4 months ago

Love is just a spin away at Chumba Casino!
Play now ▶ https://www.chumbacasino.com/ryan-sea... ...more

Ⓒ  **Chumba Casino**          [ Subscribe ]
   1.92K subscribers

👍 3   👎      ↗ Share   ↓   ☰+   ⋯

Comments 2      ⇅ Sort by

  Add a comment...

  @smcf3109 3 months ago
  😭
  👍 👎   Reply

  @cotyreed047360 2 months ago

---

**VGW**                    + Follow   ⋯
19,027 followers
3d · 🌐

We're excited to announce our newest partnership between Chumba Casino and **23XI Racing**!

Kicking off February 2 with the start of the NASCAR season, the vibrant colours of Chumba Casino will be seen across all three Toyota Camry 23XI cars.

Drivers Bubba Wallace, Tyler Reddick, and Riley Herbst will be behind the wheel and sporting Chumba Casino's branding on their fire suits and team gear all season long.

We couldn't be more excited for this collaboration with an iconic U.S. brand, and can't wait to see Chumba on the track!

Read more here: **https://lnkd.in/gb2fAkcd**

**#vgw #chumbacasino #23XIracing #nascar**





We got a fresh, new look for the 23, 35, and 45. The No. 35 Chumba Casino Toyota Camry will debut at COTA. Stay tuned for when the 23 and 45 will hit the track 👀

ChumbaCasino.com
NO PURCHASE NECESSARY. VGW Group. Void where prohibited by law. See T&Cs. 21+.
#paidpartnership



140.   VGW's illegal gambling operation has been extremely lucrative as evidenced by a portion of VGW's audited financial statements (where all numbers are in thousands of Australian dollars) for the fiscal year ended June 30, 2024, shown below.  For example, in 2024, VGW obtained revenue of Six Billion One Hundred Thirty-Three Million Six Hundred Ninety-Five Thousand Australian dollars. ($6,133,695,000), or approximately Four Billion American dollars ($4,000,000,000).



**CONSOLIDATED STATEMENT OF PROFIT OR LOSS AND OTHER COMPREHENSIVE INCOME FOR THE YEAR ENDED 30 JUNE 2024**

| Continuing operations | Note | 2024 $'000 | 2023 $'000 |
|---|---|---|---|
| Revenue from contracts with customers | 4 | 6,133,695 | 4,835,148 |
| Sweepstakes prizes | | (4,344,531) | (3,355,545) |
| Merchant fees | | (306,713) | (248,902) |
| Finance income | 5 | 13,529 | 5,753 |
| Finance costs | 5 | (41,656) | (10,849) |
| Foreign currency loss | 5 | (7,116) | (22,654) |
| Other income | 5 | 127 | 217 |
| Marketing and advertising fees | 5 | (418,005) | (359,987) |
| Contract labour, legal and professional fees | | (44,132) | (53,231) |
| Game development and licence fees | | (27,396) | (12,153) |
| Employee benefits expense | 6 | (151,994) | (116,862) |
| Share-based payments expense | | (783) | (24,396) |
| Depreciation and amortisation expense | | (9,441) | (6,927) |
| Technology and other communication expense | | (66,350) | (47,984) |
| Property and occupancy expense | | (2,594) | (2,281) |
| Sponsorship, general and administration expense | | (49,462) | (33,199) |
| Total operating expenses | | (5,456,517) | (4,289,000) |
| **Profit before income tax** | | **677,178** | **546,148** |

141.   It is thus clear that VGW through its websites, chumbacasino.com, globalpoker.com and luckylandslots.com operate illegal gambling operations in the

state of Mississippi. VGW pays no taxes to the state of Mississippi and has not obtained permits from the state of Mississippi for its operations.

142.    VGW's audited financial statements, and investor reports, clearly show that VGW has earned billions of dollars in gambling wins from United States citizens. Tens of millions, if not more, of these losses come directly from Plaintiff and other citizens of the state of Mississippi.

143.    In fact, as VGW has continued to operate with impunity, over the past five years VGW's revenue has increased at an average annual growth rate of approximately 75%. Over the past five years VGW's advertising expenditures increased at an average annual growth rate of approximately 50%. Over the past five years losses sustained by consumers playing on VGW's illegal gambling internet websites have increased at an average annual growth rate of 58%. Over the past five years VGW's pretax income has increased at approximately 92%.

144.    Furthermore, the fact that VGW has continued to operate freely and achieve such large economic profits has spurned the creation of many copycat websites which operate illegally, deprive consumers of their money, and deprive the government of tax revenue.

145.    VGW maintains detailed records of every individual bettor's identity, individualized data about each bettor's purchase and redemption history, and the bet-by-bet history of the results of every single bet that was made. In fact, VGW

has admitted under oath on several occasions that VGW captures detailed consumer data at the point of sale of the coins.  Therefore, VGW maintains all records necessary to calculate and reveal the losses sustained by Plaintiff and other citizens of the state of Mississippi.

**VGW Continuously Breaking the Law**

146.   VGW was sued in the Commonwealth of Kentucky in 2022 and expeditiously reached a class action settlement that required VGW to pay $11,750,000 for violations of Kentucky's gambling laws.

147.   Despite paying this large sum and being on official notice that its operations are illegal, VGW has brazenly chosen to continue breaking the law and operate its illegal gambling business within Kentucky.

148.   VGW also received an order to cease operating in the state of Delaware on February 23, 2023, but until just recently continued to operate in Delaware. (Exhibit "E")

149.   VGW received an order to cease operating in Connecticut on February 9, 2024, but chose to ignore the order for at least seven months before finally adhering to Connecticut's order to leave. (Exhibit "F")

150.   VGW is currently being sued in at least ten states but has chosen to continue operating its unambiguously illegal gambling websites across the majority of the United States.

**VGW Preys Upon Mississippi Citizens and Is Societally Dangerous**

151.    The state of Mississippi has long considered illegal gambling operations to
be a nuisance and societally dangerous.  Legal, permitted gambling is highly
regulated and subject to immense government oversight.

152.    VGW's illegal online gambling business is particularly insidious and
dangerous because it leverages modern technology (the internet, smartphones,
tablets, computers, and algorithms) to manipulate Mississippi citizens into
becoming gambling addicts and provides these Mississippi citizens with the ability
to satisfy this addiction 24 hours a day, 7 days a week, 365 days a year, from their
home, work, on vacation, or almost anywhere Mississippi citizens have internet
access.

153.    Every type of gambling has the potential to be highly addicting.  It is well
documented that even non-paying "social casino" offerings – those which do not
provide the ability to redeem coins for real money – generate immense financial
damage to their customers.  A 2020 NBC News article, "Addicted to losing: How
casino-like apps have drained people of millions", found on the internet at
https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-
%20have-drained-people-millions-n1239604, chronicled how a sample of 21
people described how they were hooked on casino-style apps, and emphasized the
story of a nurse in Houston who played social casino games for "at least two hours

a day." This nurse estimated that she and her husband together have lost $150,000 on these kinds of websites. She said that she and her husband "lie in bed next to each other, we have two tablets, two phones, and a computer and all these apps spinning Reel Rivals at the same time." Tragically, her story is not a unique one.

> NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent significant sums of money. They described feelings of helplessness and wanting to quit but found themselves addicted to the games and tempted by the company's aggressive marketing tactics.
>
> Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find out about their behavior.

154.    As recently as 2022, the Australian community has seen instances of adults becoming addicted to online, so called social casino games. In a post titled "What are social casino games, and why do people become addicted?" at https://www.abc.net.au/news/2022-03-01/social-casino-games-and-why-people-become-addicted/100861446, the Australian website noted the following:

> …Actual online casino gambling — as in, playing these games for money — is banned in Australia. But in social casino games, you can't win anything — so it's technically not gambling, and is much less regulated than the real thing.
>
> The global social casino market generates billions in revenue each year. For some people, these gambling simulators are just as harmful as the real thing. Last month, a Mackay woman was jailed after stealing nearly $1 million to fund her social casino game addiction, while a Perth man spoke of sinking $800 on a virtual slot game in a matter of minutes. …

This is ironic since VGW HOLDINGS, the parent company controlling and operating all VGW games and websites is an Australian company that appears to be prohibited from spreading its illegal internet gambling into its home country, while attempting to flourish in the North American markets.

155.    And it is not just news media and internet authors who have raised the concerns regarding internet social casinos.  In the Second Amended Complaint filed in the case of *Benson v. Double Down Interactive, LLC*, Case No. 2:18-cv-00525-RSL (W.D. Wash. 2018) the plaintiffs cited to several studies in support of their argument that internet gambling sites like VGW's sites have led to gambling addiction.  The result in *Benson v. Double Down, supra,* was a nationwide class action settlement of $415,000,000 that was approved in 2022.    A portion of that complaint and the citations to studies is attached as Exhibit "G".

156.    Even as recently as December 23, 2024, as part of the plaintiffs' Third Amended Complaint in *Larsen v. PTT, LLC and High 5 Entertainment LLC,* Case No. 3:18-cv-05275-TMC (W.D. Wash. 2018), allegations and citations to additional authors and texts describe the addictive propensities of online social gambling games such as VGW's.  A portion of that complaint and the citations are attached as Exhibit "H".

157.   VGW's games are even more damaging than the games chronicled in paragraphs 153-156 because VGW's games offer not only social casino games, but also real money gambling with Sweeps Coins.

158.   Gambling is highly regulated for a reason and illegal gambling is strictly prohibited in the state of Mississippi.  However, VGW is attempting to skirt all regulations and operate illegally in the state of Mississippi by claiming it is not operating within Mississippi and it is simply a social casino.  Furthermore, VGW attempts to escape civil litigation to provide compensation to its victims and escape the jurisdiction of the Courts by utilizing illegal and "utterly void" Terms of Service.  These attempts include arbitration clauses, forum selection clauses, and choice of law provisions which are likewise "utterly void" for under Mississippi law they are contracts based on illegal gambling consideration.  Also, there is an important public policy interest in adjudicating this case in this Court in the state of Mississippi.

159.   In addition, VGW's Terms of Service, including each and every clause attempting to compel arbitration, and all attempts at creating class waivers, forum selection clauses and choice of law provisions are likewise "utterly void" and unenforceable because VGW's Terms of Service are so one-sided that they are unconscionable and illusory.  In part, this is because, VGW has inserted approximately 60 provisions within its Terms of Service that allow VGW to

arbitrarily refuse to pay winning gamblers including Plaintiff and other Mississippi citizens their prizes or money, unlike properly legalized, licensed, and regulated brick-and-mortar casinos and gambling operations that are prohibited from exercising such unfettered power. A table describing these clauses in VGW's Terms of Service or Terms and Conditions is attached as Exhibit "I" and incorporated as part of this Complaint. These type clauses make each and every part of the VGW Terms of Service utterly void and unenforceable by VGW just as described by the Mississippi courts. *MS Credit Ctr., Inc. v. Horton,* 926 So.3d 167, 177 (Miss. 2006); *Krebs v. Strange,* 419 So.2d 178, 182 (Miss. 1982).

**Plaintiff's Lawsuit to Simultaneously Deter Illegal Gambling and Compensate Victims**

160.    This action is being brought under MS Code § 87-1-5 a statute that has the purpose of simultaneously compensating those who have lost money to illegal gambling operations but also deter illegal gambling by making illegal gambling operations, such as VGW's, unprofitable by forcing them to return their illegal earnings. MS Code § 87-1-5 provides a powerful enforcement mechanism to disincentivize illegal gambling, protect Mississippi citizens, and protect the regulated, legal gambling operators' businesses which are threatened by these illegal online gambling operations such as VGW's.

161.   The Mississippi legislature has also emphasized its public policy to deter illegal gambling and provide remedies.  This is evidenced by the fact that not only the loser of an unlicensed gambling wager is allowed to sue and recover losses but that right also extends to the "wife or children" of the losing wagerer in MS Code § 87-1-5 as well.

## CLASS REPRESENTATION ALLEGATIONS

162.   Plaintiff seeks to sue VGW and Plaintiff seeks to represent a class defined as and limited to all citizens of the state of Mississippi who suffered losses of money on Chumba Casino, Global Poker, or LuckyLand Slots and VGW during the applicable limitations period (hereafter the citizens of the state of Mississippi are also referred to as the "Class").

163.   VGW argues that their Terms of Service contain a class waiver prohibiting wagerers from participating in class action lawsuits and therefore no class should be certified.  However, VGW's Terms of Service are "utterly void".  Furthermore, like the arbitration clauses, forum selection clauses, and choice of law provisions, this class waiver – even if it were to be severed from the Terms of Service – is a contract based on illegal gambling consideration and therefore "utterly void" under MS Code §§ 87-1-1 – 87-1-5.  The Terms of Service and any and all allegedly severable clauses are "utterly void" under Mississippi law.

164.   Specifically excluded from the Class are VGW, their officers, directors, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by VGW, and the heirs, successors, assigns, or other persons or entities related to or affiliated with VGW and or VGW's officers and or directors, the judge assigned to this action, and any member of the judge's immediate family.

165.   Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

166.   **Numerosity**:  On information and belief numerous Mississippi citizens fall into the definition of the Class. Members of the class can be identified through VGW's records, discovery and other third-party sources.

167.   **Commonality and Predominance**:  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

168.   **Typicality**:  Plaintiff's claims are typical of the claims of the other members of the Class and that among the other things all Class members were similarly situated and were comparably damaged through VGW's wrongful conduct as set forth herein.  The claims of all Class members are similar in that they all lost

money playing the games owned and operated by VGW.  Further there are no defenses available to VGW that are unique to Plaintiff.

169.  **Adequacy of Representation**:  Plaintiff will fairly and adequately protect the interests of the Class, which is estimated to consist of numerous Mississippi citizens.  Plaintiff has retained counsel that has been a member of the Mississippi Bar since 1978, and has more than 40 years litigation experience, mostly in the state of Florida, and partly in the state of Mississippi, and Plaintiff intends to vigorously prosecute the action on behalf of the Class.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

170.  **Superiority**:  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriments suffered by individual Class members are relatively small compared to the burden and expense of individual litigation on their claims against VGW.  It would thus be virtually impossible for the Class to obtain effective redress for the wrongs committed against the members on an individual basis.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by the action.  By contrast, the class action device

provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

**Additional Basis for United States and Mississippi Jurisdiction**

171.   Plaintiff and all similarly situated Mississippi citizens ("the Class") are entitled by law to have at least their claims against VGW HOLDINGS, VGW MALTA and VGW GP adjudicated in this Court for the claims of the illegal gambling operations of VGW MALTA and VGW GP because VGW MALTA and VGW GP will not be subject to liability if the claims against them are adjudicated in Malta, a foreign country.

172.   VGW MALTA and VGW GP are licensed gambling operators in Malta, and as such, Malta will not litigate nor enforce Plaintiff's and the Class' claims against VGW MALTA and VGW GP.   Evidence of the Malta licenses for VGW MALTA and VGW GP are attached as Exhibit "J", which show that VGW MALTA and VGW GP are license holders permitted by Malta to operate internet gambling websites.

173.   In 2023, Malta amended Chapter 583 of the Malta Gaming Act to include Article 56A, which states that "…(a) no action shall lie against a licence holder … relating to the provision of a gaming service … if such action:",

>   (i) conflicts with or undermines the legality of the
>   provision of gaming services in or from Malta by virtue

of a licence issued by the Authority, or the legality of any
legal or natural obligation resulting from the provision of
such gaming services; and

(ii) relates to an authorized activity which is lawful in
terms of the Act and other applicable regulatory
instruments; and

(b)  The Court shall refuse recognition and, or enforcement in Malta
of any foreign judgment and, or decision given upon an action of the
type mentioned in sub-article (a).

According to Article 56A, VGW MALTA and VGW GP, and by extension VGW

HOLDINGS, are immune from any violation of Mississippi or United States law

regarding illegal gambling operations.  Therefore, by having actively participated

in illegal gambling operations in the United States and throughout Mississippi,

VGW MALTA and VGW GP, and by extension VGW HOLDINGS, are subject to

the jurisdiction of this Court and Mississippi law, for otherwise they could be

immune from any liability if Malta law is allowed to control or supersede

Mississippi law.  A copy of Article 56A of the Malta Gaming Act is attached as

Exhibit "K".  A copy of the Malta Gaming Act is attached as Exhibit "L".  And the

admission by counsel for VGW of the existence and authenticity of Article 56A can

be found at Exhibit "M" (Doc. 20, p. 17, ftn. 2)

174.   Plaintiff and the Class are entitled to litigate the violations of Mississippi

law in this Court in this action.  This is because it is futile to require Plaintiff and

the Class to litigate their claims of violation of Mississippi law in Malta, a country

which will not recognize or apply Mississippi law regarding civil remedies for

illegal gambling operations by VGW MALTA and VGW GP, and by extension

VGW HOLDINGS.  It is futile because Plaintiff and the Class should be entitled to

return promptly to this Court to litigate the claims of violations of Mississippi law

when the Malta courts refuse to follow or apply Mississippi law.  This is confirmed

by court decisions such as *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166 (10th Cir. 2009);

*Sigalas v. Lido Mar.,* 776 F.2d 1512 (11th Cir. 1985); and *Behrens v. Arconic, Inc.*,

502 F. Supp. 3d 931 (E.D. Pa. 2020).

175.   As recently chronicled and described in Australian Financial Review, in the

12 to 13 years since VGW and Laurence Escalante spoke at the gathering of tech

investors described in paragraph 61, above and Exhibit "B",

> …Escalante's online gaming company, VGW, pioneered the use of a
> US legislative loophole that allowed it to offer casino-like experiences
> online with cash prizes in states where online gambling has long been
> banned [https://www.afr.com/companies/games-and-
> wagering/laurence-escalante-is-living-large-off-controversial-
> gambling-billions-20240304-p5f9kc]. The company managed to get
> around the ban partly by providing an option to play the games for
> free.
>
> VGW's Chumba Casino has been the most popular sweepstakes
> casino in the US, and Craven's Stake.us has also jumped on board and
> runs a similar online gaming portal. …

Exhibit "N".

Therefore, as VGW has evolved over the last decade it has grown from an internet

game site to a multi-billion-dollar illegal gambling enterprise that attempts to

camouflage and shield itself with legal procedural walls that no illegal enterprise should be allowed to do.

## CAUSES OF ACTION

## COUNT I

## SUIT – RECOVER MONEY LOSSES

## MS Code § 87-1-5

176.   Plaintiff, individually and on behalf of the Class sues VGW and realleges paragraphs 1-175, above.

177.   In conjunction with MS Code § 87-1-1, the Mississippi legislature has established in MS Code § 87-1-5 that all agreements and contracts for gambling transactions are "utterly void" and that the Plaintiff may sue and recover, on behalf of the Plaintiff and other similarly situated individuals, all money lost and paid or delivered to the winner of the gambling transaction or from the person knowingly receiving the money from the gambling transaction.

178.   Specifically, MS Code § 87-1-5 states in part:

> …If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game, or by betting on any horse race or cockfight, or at any other sport or pastime, or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, or his wife or children, may sue for and recover such money, property, or

> other valuable thing so lost and paid or delivered, or any part thereof,
> from the person knowingly receiving the same, with costs …

*Id.*

An exception is contained within the statute for legally permitted brick-and-mortar

casinos ("structures") and cruise vessels that have been specifically licensed and

permitted by the state of Mississippi and its regulatory agencies.  VGW is not such

a legally permitted entity, structure, or cruise vessel.

179.   Plaintiff is authorized to proceed with litigation against VGW to recover all

losses that Plaintiff suffered, and those losses suffered by the Class, the other

citizens of Mississippi, at least for the last three years prior to the filing of this

complaint

180.   VGW is the "person knowingly receiving" "money, property, or other

valuable thing, real or personal" obtained from Mississippi citizens through

gaming, gambling, and wagers through this date as defined in MS Code § 87-1-5.

181.   Plaintiff and the Class are recognized and entitled by Mississippi law to the

return of all gambling or gaming losses suffered by Plaintiff and the Class pursuant

to MS Code § 87-1-5 and because any such gambling agreements are "utterly

void", as stated in MS Code § 87-1-1, which provides:

> … Contracts, judgments, securities, conveyances made, given,
> granted, or executed, where the whole or any part of the consideration
> or foundation thereof shall be for money, or any valuable thing won,
> lost, or bet at any game or games, or on any horse-race, cock-fight, or

at any other sport, amusement, or pastime, or on any wager whatever, or for the reimbursing or repaying any money knowingly lent or advanced for the purpose of such gaming or gambling, or to be wagered on any game, play, horse-race, cock-fight, or on any sport, amusement, pastime, or wager, shall be utterly void.…

*Id.*

182. MS Code § 87-1-5 states,

…If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game, or by betting on any horse race or cockfight, or at any other sport or pastime, or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, or his wife or children, may sue for and recover such money, property, or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, with costs…

183. MS Code § 87-1-5 authorizes Plaintiff to obtain a judgment on behalf of Plaintiff and the Class.

WHEREFORE, Plaintiff requests a judgment against Defendants VGW HOLDINGS LIMITED, including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP LIMITED, VGW HOLDINGS US INC., and VGW US INC. as authorized by MS Code § 87-1-5 for the monetary losses incurred by Plaintiff and the Class compromised of other citizens of the state of Mississippi for at least the period beginning three years prior to and through the date of this complaint, together with costs, and that the Court grant such other just and appropriate relief.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of any and all issues in this action so triable by

Mississippi law.

                                        **/s/Dennis Wells**
                                        Dennis Wells
                                        Webb & Wells, P.A.
                                        P.O. Box 915432
                                        Longwood, Florida 32779
                                        (407) 865-5600
                                        Mississippi Bar No.: 7098
                                        Email: denniswells2@icloud.com
                                        Attorney for Plaintiff